IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPLICATION OF THE UNITED ) <br> STATES OF AMERICA FOR A ) <br> WARRANT DIRECTING THE ) <br> DISCLOSURE OF GPS/E911 ) <br> LOCATION DATA RELATING TO A ) <br> SPECIFIED WIRELESS TELEPHONE ) | Magistrate No. 20-2174 <br><br> **[SEALED]** |

### APPLICATION FOR WARRANT DIRECTING THE DISCLOSURE OF PROSPECTIVE GPS/E911 LOCATION DATA RELATING TO A WIRELESS TELEPHONE

I, Randy Grossman, Task Force Officer (TFO) for Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, state as follows:

1. I am an "Investigative or Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. TFO Randy Grossman is a certified Municipal Police Officer in the State of Pennsylvania (MPOETC# 39173) having completed the Act 120 certification and maintained training and employment for a period of approximately twelve years. I have been employed by the Allegheny County Sheriff's Office as a police officer since December 2008 and have been assigned to the Investigations Division since June 2012. I am currently assigned the Drug Enforcement Administration as a Task Force Officer. Prior to assignment at DEA, I was assigned to the AM Fugitive Squad. I have been involved in the execution of numerous arrest and search warrants as well as on-view arrests. I have been sworn in and participated in investigations with the FBI and DEA which have led to the seizure of narcotics such as marijuana, cocaine, crack cocaine,

methamphetamines and heroin as well as the seizure of firearms and cellular telephones during those search warrants. I have received training and education from the Allegheny County Sheriff's Office, Allegheny County Police Training Academy, Municipal Police Officers Education and Training Commission, Pennsylvania Commission on Crime and Delinquency, National Tactical Officers Association, Safariland Training Group and the Institute for Law Enforcement Education and Drug Enforcement Administration.

3.      I have been involved in narcotics-related arrests and the service of search warrants that resulted in the seizure of narcotics.  In addition, I have been involved in the supervision of informants who provided information and assistance in drug trafficking investigations.  During the course of my training and experience, I have become familiar with the methods associated with the distribution of drugs, the laundering of drug proceeds, and the organization of drug conspiracies.

4.      I know that it is a common practice for drug traffickers to utilize multiple telephones (often, but not always, pre-paid cellular telephones), counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from detection by law enforcement.  Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual.  Drug traffickers often require the use of a telephone facility to negotiate times, places, prices, and schemes for importing, possessing, concealing, and distributing controlled substances and for arranging the disposition of proceeds derived from the sale of controlled substances.

5.      For the reasons and to the extent detailed below, this application seeks:

       a.      A warrant pursuant to 28 U.S.C. § 1651(a), Federal Rules of Criminal

Procedure 41 and 57(b), 18 U.S.C. § 2703(c)(1)(A), and any other applicable provision, directing the disclosure of records and physical location data, as described more fully below, generated at any time up to 45 days from the date the warrant is issued, at such intervals and times as the United States may request, including during nighttime hours, that will establish the approximate position of the wireless telephone serviced by **AT&T** and assigned telephone number **(209) 981-5181** (**"Target Telephone"**), subscribed to and used by Francisco **BARBA** ("**BARBA**").

   b. Authorization under 18 U.S.C. § 3103a, Fed.R.Crim.P. 41(f)(3), and any other applicable provision, for good cause shown, not to reveal the warrant applied for herein until 30 days after acquisition of the last court-authorized disclosure (unless extended for good cause shown by an updated explanation of the need for further delay);

   c. An order pursuant to 18 U.S.C. § 2705(b) and any other applicable provision, in conjunction with the warrant applied for herein, that directs **AT&T**, as well as its agents and representatives, not to disclose the existence of the warrant, its execution, or the existence of the underlying investigation until further notice; and

   d. An order sealing until further notice the application, warrant, and all orders and other papers and writings filed with or concerning this application because, as further explained below, a sensitive investigation is currently ongoing and premature disclosure of the existence of the investigation could result in, among other things, danger to those involved in the investigation and loss of evidence.

  6. This application relates to an ongoing investigation of **Ryan SCHOENING** ("**SCHOENING**"), **Derek HILLEBRAND** ("**HILLEBRAND**"), **Darnell SMITH** ("**SMITH**"), **BARBA** and others known and unknown for the distribution of methamphetamine, as well as other controlled substances. As established below, there is probable cause to conclude that **BARBA**

uses **Target Telephone** to communicate about the distribution of narcotics and/or possesses **Target Telephone** while he is engaged in federal felony drug trafficking offenses, including violations of Title 21, United States Code, Section 841(a)(1).

7.      **AT&T**, which services **Target Telephone**, has the technical means to generate and provide the records and physical location data referenced herein.  This data is the product of techniques that the service provider may have developed to comply with a federal mandate to supply emergency responders with enhanced 911 ("E-911") service.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

8.      When directed pursuant to court order, **AT&T**, will provide a designated law enforcement agency with periodically-updated physical location data with respect to the **Target Telephone**.

9.      If, for any reason, the provider is unable to generate sufficient location information by sending a signal to the **Target Telephone** or by otherwise using known reference points, the government requests that the provider furnish such other physical location data as is available, including information reflecting the tower and antenna face ("cell site") used by the **Target Telephone** at the start and end of any call.  The government further requests that the warrant apply to any changed telephone number(s) assigned to an instrument bearing the same ESN, IMEI, or IMSI number as the **Target Telephone,** and to any changed ESN, IMEI, or IMSI number assigned to the same telephone number as the **Target Telephone** within the period of disclosure directed by this warrant.

### III. PROBABLE CAUSE

10. I submit that the following establishes probable cause to conclude that crimes have been committed, that user of **Target Telephone**, who is believed to be **BARBA**, committed and will continue to commit those crimes, and that the information likely to be received concerning the location of **Target Telephone** will constitute evidence of the commission of those crimes in the Western District of Pennsylvania.

11. It should be noted that I have personally participated in this investigation. I have reviewed information obtained through legal process, such as telephone records, and information obtained through law enforcement and commercial databases. In addition, I have discussed this case with, and reviewed the reports of, other law enforcement officers who have been involved in this investigation and have provided information and knowledge of **BARBA** distributing methamphetamine from California to the Western District of Pennsylvania or who have investigated **BARBA** in the past. I have also reviewed information provided by an informant who is familiar with **SCHOENING** and has knowledge of **SMITH**, both of whom are supplied methamphetamine from California.

12. This affidavit is being submitted for the specific purpose stated herein. I have not, therefore, included every fact known to me concerning this investigation. In addition, it should be noted that any interpretations of evidence included below are based on the results of this investigation so far, my training and experience, and the training and experience of other law enforcement officers who are involved in this investigation.

13. In July 2020, the Pennsylvania State Police, Troop C Vice Unit, along with PSP Clearfield Barracks, initiated an investigation into **SCHOENING** and his narcotic-trafficking organization. **SCHOENING** has numerous convictions involving related offenses.

14. A joint investigation conducted by the Drug Enforcement Administration (DEA), United States Postal Service – Office of Inspector General (USPS-OIG), Pennsylvania State Police (PSP), and the United States Postal Inspection Service (USPIS) has revealed the SCHOENING Drug Trafficking Organization ("**SCHOENING DTO**") is an organization that is responsible for the trafficking and distribution of large amounts of kilogram quantities of methamphetamine from California to Pennsylvania through the United States Postal Service ("Postal Service"). The **SCHOENING DTO** also transports narcotics proceeds from the distribution of controlled substances via the Postal Service to the Modesto/Manteca, CA area from Pennsylvania. Agents have reviewed characteristics of dozens of suspicious parcels and through that examination, believe that the Organization's parcels typically have similar characteristics, such as the mail type (i.e., priority U.S. Mail), origin (i.e., Modesto/Manteca), and the method of postage payment, the weight, and the destination/return mailing addresses. Agents believe that the Organization's parcels are usually priority mail parcels that originate in Modesto/Manteca, CA. Agents are further aware members of the **SCHOENING DTO** routinely conduct tracking inquiries on the USPS parcels. Agents have determined that **Target Telephone** is utilizing the same shipping and tracking tactics using priority mail parcels to and from Modesto/Manteca, CA. Agents served an administrative subpoena for cellular telephone **Target Telephone**, which revealed this telephone number is in frequent contact with several members of this conspiracy.

15. Case agents for this investigation have been in direct, personal contact with a cooperating source ("**CS**") in recent months. The case agents believe **CS** to be reliable and credible because, as demonstrated herein, much of **CS**'s information has been independently corroborated by prior and/or subsequent events and observations that were beyond **CS**'s control. The case agents have had in-person discussions with **CS** about **CS**'s knowledge of ongoing criminal activity

in Western Pennsylvania, including the narcotics-trafficking activities of **SCHOENING** and knowledge of **SMITH**.

16.     It should be emphasized that **CS** is not an anonymous source.  The agents' interaction with **CS** has been in-person and **CS** has been fully aware that the agents know the identity of **CS**.  The requirement that **CS** provide only truthful information was stressed to **CS** at the beginning of **CS**'s cooperation.  **CS** has a criminal record that includes several adult convictions, including for drug crimes.  It is likely that **CS** is motivated to cooperate by a hope that the cooperation will help **CS** regarding potential future charges based on prior drug crimes.

17.     On September 13, 2020 TFO Eric Harpster and PSP Trooper Lance Howell were notified by US Postal OIG SA Adam Gaab that he identified two suspicious parcels that were sent from Sacramento, CA on September 12, 2020, to be delivered to addresses in Clearfield County. The first parcel, associated with tracking number 9505 5159 1762 0256 4606 06 ("**PARCEL 1**"), was addressed to Drew ATTEBERY at 1957 Clark Rd. Olanta, PA 16863 with a return address of Michael STEVEN 1537 Glennwood Dr. Modesto, CA95359 and weighed 7 pounds and 9 ounces. The second parcel, associated with tracking number 9505 5128 9721 0256 4628 83 ("**PARCEL 2**"), was addressed to Adam McCARTHY at 2238 Belsena Rd. Madera, PA 16661 with a return address Chris MENDEZ 215 at Almond Ave Manteca, CA 95337 and weighed 7 pounds and 12 ounces.

18.     Both **PARCEL 1** and **PARCEL 2** were consistent in weight with packages containing methamphetamine as described by **CS** that had been previously shipped from California.

19.     On September 13, 2020 at approximately 11:20 pm, SA Gaab retrieved **PARCEL 2** from the Pennwood Place Processing and Distribution Center, located at 51 Pennwood Place,

Warrendale, PA 15086 and secured the parcel in the USPS Drug Evidence Locker as per USPS policy and procedures.

20. On September 13, 2020 both **PARCEL 1** and **PARCEL 2** were tracked by an individual using the USPS SMS Mobile App from IP address 73.48.215.254. An administrative subpoena was issued to Comcast to obtain the subscriber for IP address 73.48.215.254. The IP address is registered to Maria Barba, who resides at 6157 Buckskin Pl. Stockton CA 95210. Francisco **BARBA**'s address listed on his California driver's license is 6157 Buckskin Pl. Stockton, CA 95210.

21. On September 14, 2020 at approximately 12:30 pm, SA Gaab removed **PARCEL 2**. SA Gaab had Solo, a dog trained to detect controlled substances, along with his handler, Allegheny County K-9 Police Officer Steven Dawkin, examine the parcel. According to Officer Dawkin, Solo positively indicated on the parcel, indicating the presence of controlled substances.

22. SA Gaab advised that **PARCEL 1** was to be delivered to Drew ATTEBERY at 1957 Clark Rd. Olanta, PA 16863 around 9:15 am, on September 14, 2020, so Trooper Howell conducted surveillance at 1957 Clark Road, Knox Township, PA in Clearfield County.

23. At approximately 10:00 am, Trooper Howell observed the U.S. Postal Courier pull into 1957 Clark Road. He then observed the courier scan a box package and walk it over to the front porch of the residence. The courier then placed it on a table that was on the front porch of the residence. It shall be noted the between the residences of 1957 Clark Road and 1837 Clark Road is located another trailer residence with an unknown residence numeric.

24. At approximately 11:19 am, Trooper Howell observed a black in color Volvo Sedan bearing no registration and a temporary registration in the back window pull into the front of 1957 Clark Road. Trooper Howell then observed **HILLEBRAND**, who he had positively identified

based on previous surveillance and personal contact, exit the driver's side. Trooper Howell observed **HILLEBRAND** to stand by his vehicle smoking a cigarette as he looked towards the direction of the package. **HILLEBRAND** then walked onto the front porch of the residence, where Trooper Howell observed him hover over the package. **HILLEBRAND** then walked to the front door and knock on the door. After no one answered, **HILLEBRAND** walked back over to the package and examined it. It appeared that **HILLEBRAND** was being very cautious and was constantly looking around so see if anyone was present.

25. At approximately 11:24 am, **HILLEBRAND** took the package off the table, and walked back towards his vehicle. **HILLEBRAND** then sat in the driver's seat of his vehicle with the package. A few minutes later, **HILLEBRAND** exited the vehicle while still holding the package and walked back toward the trunk of the vehicle. It appeared **HILLEBRAND** was going to place the package in the trunk, but he instead walked the package back over to the residence. Trooper Howell then observed **HILLEBRAND** to place the package on the floor of the porch, rather than back on the table where it originally located. **HILLEBRAND** then got back into his vehicle, and Trooper Howell observed him back out of the driveway and continued to back up on Clark Road to 1837 Clark Road.

26. **HILLEBRAND** then pulled into 1837 Clark Road. **HILLEBRAND** exited his vehicle, to which I could see him talking with two other unknown individuals. Trooper Howell then observed **HILLEBRAND** open his trunk, to which he retrieved an unknown item from a red and black duffle bag. **HILLEBRAND** then went into the residence of 1837 Clark Road for a few minutes. Trooper Howell observed **HILLEBRAND** return to his vehicle and leave the residence traveling north on Clark Road out of my sight. Trooper Howell continued surveillance until 2:30 pm.

27. On September 16, 2020 at 8:45 am, a court order at miscellaneous number 20-mj-1880, authorizing a search of **PARCEL 2**, was signed by the Honorable Patricia L. Dodge, United States Magistrate Judge. TFO Harpster and SA Mike Johns opened the parcel and recovered two Tupperware containers containing 2.3 kilograms of methamphetamine. The package and all its contents were photographed, and the methamphetamine was field tested with positive results using a Marquis Reagent Field Test.

28. On September 21, 2020, at 1:33 pm, **HILLEBRAND**, utilizing **Target Telephone**, contacted the USPS to check the status of **PARCEL 2**. HILLEBRAND provided the tracking number, which was provided to the sender at the time it was shipped, and "2238" the numeric portion of the address 2238 Belsena Rd., where the package was being delivered.

29. On September 29, 2020, USPS OIG SA Adam Gaab reviewed surveillance video from the East Liberty Post Office (PO), located at 6360 Broad St, Pittsburgh, PA 15206, to identify the individual that mailed United States Postal Service (USPS) parcels bearing tracking number 9505 5145 3363 0260 3090 01 ("**PARCEL 3**") and tracking number 9505 5145 3363 0260 3089 98 ("**PARCEL 4**"). The Priority Mail parcels were scanned upon arrival at the East Liberty PO at approximately 4:53 p.m. on September 16, 2020. **PARCEL 3** was addressed to Silvia Ayala, PO Box 576899, Modesta, CA 95357 with a return address of Darrel Jackson, 5514 Jackson St, Apt 4, PGH, PA 15206. **PARCEL 4** was addressed to Spencer Wreath, PO Box 4381, Manteca, CA 95337 with a return address of Darrel Jackson, 5514 Jackson St, Apt 4, PGH, PA 15206.

30. The surveillance video showed an unidentified black male, later identified as **SMITH**, enter the PO and mail **PARCEL 3** and **PARCEL 4**. **SMITH** was then observed departing the PO parking lot in a white Jeep Grand Cherokee with black rims, bearing a partial Pennsylvania registration plate of LHG 1_23. After reviewing the surveillance video, SA Gaab

was not able to identify the fifth digit in the registration plate.

31. On September 29, 2020, SA Gaab requested DEA TFO Steve Dawkin to conduct a query of the PCS-LPR license plate reader system for the partial registration plate of the Jeep Grand Cherokee. On September 30, 2020, DEA TFO Dawkin advised the PCS-LPR captured an image of a white Jeep Grand Cherokee with black rims, bearing Pennsylvania registration plate LHG 1023 on September 16, 2020.

32. SA Gaab conducted a law enforcement inquiry for Pennsylvania registration plate LHG 1023, revealed it is registered to Darnel **SMITH** at address 232 Seabright St, Pittsburgh, PA 15214. SA Gaab obtained **SMITH**'s Pennsylvania driver's license through Pennsylvania Justice Network ("JNET"). After reviewing **SMITH**'s PA driver's license photograph, SA Gaab identified **SMITH** as the unidentified black male who mailed **PARCEL 3** and **PARCEL 4** at the East Liberty PO on September 16, 2020.

33. On October 1, 2020, SA Gaab reviewed surveillance video from the Pittsburgh Main Post Office (PO), located at 1001 California Ave, Pittsburgh, PA 15290, to identify the individual that mailed United States Postal Service (USPS) parcel bearing tracking number 9505 5144 0216 0254 4621 97 ("**PARCEL 5**"). The Priority Mail parcel was scanned accepted at the Pittsburgh Main PO at approximately 5:31 p.m. on September 10, 2020.

34. The surveillance video showed **SMITH** enter the PO and mail **PARCEL 5**, which was addressed to Francisco Barba, 6157 Buckskin Pl, Stockton, CA 95210 with a return address of Darrel Jackson, 5514 Jackson St, apt. 4, PGH, PA 15206.

35. Based on my knowledge of the investigation and communications with CS, these packages are consistent with mailing proceeds from the distribution of narcotics to California.

36. Based on my training and experience, I am aware that "text tracking" is a

mechanism by which customers of the USPS can be notified of the status of his/her parcel through text message correspondence from the USPS. The text message from the USPS will be the latest tracking information associated with the parcel. Your Affiant is aware that **Target Telephone** utilized USPS "text tracking" on **PARCEL 5** at 5:57 pm.

37. On October 22, 2020, United States Postal Service (USPS) parcel bearing tracking number 9505 5144 9866 0296 1447 87 ("**PARCEL 6**") was mailed from the Falls Creek Post Office, located at 65 Main St, Falls Creek, PA. **PARCEL 6** was scanned upon arrival at the Falls Creek PO, at approximately 3:47p.m. **PARCEL 6** was addressed to Francisco Barba, PO Box 2276, Manteca, CA 95336 with a return address of Coders Custom Contracting, 123 Van Ness St., Sykesville, PA 15865. Based on my knowledge of the investigation, the characteristics of the package were consistent with the other packages of money that have been sent to California.

38. Phone records have been obtained and reviewed for **Target Telephone.** Recent review of the records revealed that **Target Telephone** is still an active cell phone and is in contact with members of the **SCHOENING DTO**. The investigation of **SCHOENING, SMITH, HILLEBRAND,** and **BARBA** is likewise still active.

IV.   CONCLUSION

39. Based upon the facts and information set forth in this application and Affidavit, I respectfully submit that there is probable cause to believe that the user of the **Target Telephone**, believed to be **BARBA**, is involved in the distribution of methamphetamine in the Western District of Pennsylvania. Furthermore, this investigation has established that the information likely to be received concerning the location of the **Target Telephone** will constitute evidence of that crime. Said information will be useful in, among other ways, positively identifying the user of the **Target Telephone**, tracking the movements and activities of **BARBA**, identifying drug trafficking

associates, assistance with identifying the travel of **BARBA** while transporting narcotics in the Western District of Pennsylvania, and locating potential stash houses where drugs and drug proceeds are stored.

40. The investigation of **SCHOENING, SMITH, HILLEBRAND, BARBA**, and others both known and unknown is currently ongoing. The goal of the investigation is to positively identify **BARBA's** co-conspirators, including the source of supply, to determine the precise manner in which the criminal organization functions, and to dismantle the criminal organization through successful arrests and prosecutions of co-conspirators, including the source(s) of narcotics supply, distributors, and others who support the distribution of methamphetamine. Unfortunately, the goal of the investigation has not yet been fully achieved. Notification to the user of the disclosure of records and/or physical location data pertaining to the **Target Telephone** would very likely cause them to, among other things, discard the telephones they are currently using and further fortify and conceal their criminal operation. In doing so, evidence is likely to be lost or never obtained, suspects may flee the jurisdiction, and the safety of informants and law enforcement officers may be imperiled.

Based upon the foregoing, there is probable cause to conclude that the records and physical location data of the **Target Telephone** constitute evidence of crimes committed, and being committed, in the Western District of Pennsylvania. The records and physical location data will reflect where the **Target Telephone** and certain associates are located when criminal activity occurs and will also reflect, in conjunction with physical surveillance and other investigative steps, the physical appearance and identity of the user of the **Target Telephone** and those with whom he is interacting.

The above information is true and correct to the best of my knowledge, information and belief.

<u>/s/ Randy Grossman</u>
Randy Grossman
Task Force Officer – DEA

Sworn and subscribed before me, pursuant to Fed.R.Crim.P. 4.1(b)(2)(A), this 28th day of October 2020.

_____
HONORABLE MAUREEN P. KELLY
United States Magistrate Judge